# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| **ESTATE OF GABRIEL MIRANDA, JR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. 7:18-cv-0348** |
| | § | |
| **HARLINGEN CONSOLIDATED** | § | |
| **INDEPENDENT SCHOOL DISTRICT,** | § | |
| **ARTURO J. CAVAZOS,** | § | |
| **EDINBURG POLICE DEPARTMENT,** | § | |
| **DAVID EDWARD WHITE,** | § | |
| **THE CITY OF EDINBURGE, TEXAS,** | § | |
| **RICHARD H. GARCIA,** | § | |
| **RICHARDD M. HINOJOSA,** | § | |
| **THE COUNTY OF HIDALGO,** | § | |
| **RAMON GARCIA,** | § | |
| **NORMA JEAN FARLEY, and** | § | |
| **VALLEY FORENSICS, P.L.L.C.,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS NORMA JEAN FARLEY'S AND VALLEY FORENSICS, P.L.L.C.'S REPLY TO PLAINTIFF'S COMBINED RESPONSE TO <u>RULE 12(b)(1) AND 12(b)(6) MOTIONS TO DISMISS</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COME NOW** Defendants Norma Jean Farley ("Dr. Farley") and Valley Forensics, P.L.L.C. ("Valley Forensics") (collectively, "Defendants") who file this Reply to Plaintiff's Combined Response to Defendants' Rule 12(b)(1) and 12(b)(6) Motions to Dismiss.  In support of this Reply, Defendants respectfully show the Court the following:

## <u>INTRODUCTION</u>

Plaintiff's strategy in addressing Defendants' Rule 12(b)(1) and 12(b)(6) Motions to Dismiss[1] comes down to two approaches:  1) amend the pleadings; and 2) selectively pick and

---

[1]    Collectively, the "Motions to Dismiss."  Citations to particular page references will be designated as: (Motion, p. #).

choose whether to apply state law or federal law, without regard to consistency or the law. Neither of these approaches can save Plaintiff's Complaint from dismissal.

As shown repeatedly in the Motions to Dismiss, a pleading amendment would be futile. Indeed, the pleading amendments suggested by Plaintiff would not change Plaintiff's lack of standing. Although amending to bring in a representative for the Estate of Gabriel Miranda, Jr. (the "Estate") would solve the lack of capacity problem, as Defendants originally acknowledged (Motion, pp. 3-4), the addition of the Estate's representative would not allow the Estate to recover damages because Plaintiff disavows the only means it has of recovering damages. Furthermore, adding the Estate's representative would not bestow civil rights on a deceased person.

Also, the pleading amendments suggested by Plaintiff would not state a claim upon which relief may be granted. Plaintiff asserts no facts – even as proposed in the amendments – which constitute racial, ethnic, or other discrimination of any kind. Plaintiff's amendments merely expressly point out what was already apparent from the original Complaint: that Gabriel Miranda, Jr. ("Miranda Jr.") was Hispanic, male, and a resident of the Rio Grande Valley whose family had limited income. Based on nothing more, Plaintiff's proposed amendments continue the pattern in Plaintiff's Complaint: simply speculating that Defendants' autopsy conclusion that Miranda Jr. committed suicide was motivated by ethnic, gender, or socio-economic considerations rather than the facts. Plaintiffs' proposed amendments fail to provide a concrete example of discrimination of any kind. Such speculation does not state a valid claim.

Finally, Plaintiff cannot take a cafeteria approach to the application of state and federal law, picking state law when it wishes, rejecting state law when state law is not beneficial, and using the same approach with federal law. Though done improperly and without alleging

supportive facts, Plaintiff has asserted a violation of 42 USC §1983 ("Section 1983").  As shown in the Motions to Dismiss, courts apply state law to fill the gaps in the administration of civil rights suits.  Standing is one of those gaps.  But, the provisions of the United States Constitution are not. Federal courts apply federal law to determine if a federal Constitutional provision is violated, and those courts have all held that a deceased person has no Constitutional rights. There are many reasons why this Court should dismiss this case, but a deceased person's lack of Constitutional rights stands above them all.   Having no constitutional rights which can be violated, Plaintiff cannot bring a Section 1983 claim.  Even if a pleading amendment could solve all of the other deficiencies raised by Defendants, unfortunately, no pleading amendment can resurrect the dead.   Accordingly, the Court must dismiss this case for lack of standing or, alternatively, for failure to state a claim upon which relief may be granted.

**REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS**

**I.      Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court should Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction**

**A.      The Requirement that the Estate Sue Through a Representative**

In their Rule 12(b)(1) Motion to Dismiss, Defendants demonstrated that pursuant to 42 U.S.C. § 1988, state common law is used to fill the gaps in the administration of civil rights suits, including in matters of standing.  42 U.S.C. § 1988(a); *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004).  Furthermore, Defendants showed that Plaintiff, the Estate, filed a direct claim and did not file through a representative, which is improper because an "estate" is simply the decedent's property, and an estate is not a legal entity and cannot sue or be sued as such.  TEX. ESTATES CODE § 22.012; *Walzem Development Co., Inc. v. Gerfers*, 487 S.W.2d 219, 223 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.); *see also Janak v. Security Lumber Co., Inc.*, 513 S.W.2d 300, 301 (Tex. Civ. App.—Houston [1st Dist.] 1974, no writ).

Plaintiff responded by lecturing Defendants on estate law in Texas and asserting that a cause of action, or claim, is part of the property that comprises a deceased's estate. (Response, pp. 8-12). Plaintiff then triumphantly announced that the parents of Miranda Jr. have applied to the county court where the Estate is being probated for appointment as the personal representatives of the Estate. (Response, p. 12). Plaintiff assured the Court that upon appointment, Miranda Jr.'s parents could appear as representatives of the Estate, thereby addressing the issue. (*Id.*).

Plaintiff overlooks the fact that Defendants had already accounted for this possibility in their Rule 12(b)(1) Motion to Dismiss. Defendants stated that "the Court could treat such a defect as one of a failure of capacity, rather than one of standing, and allow Gabriel Miranda, Jr.'s parents to enter an appearance to assert claims on behalf of the Estate." (Motion, pp. 3-4). But, as Defendants further demonstrated, solving the capacity problem does not solve the standing problem, because the Estate does not have standing to bring this Section 1983 action *even if the parents of Miranda Jr. appear as the Estate's representatives*. (Motion, pp. 4-8).

Plaintiff made an effort to address the two standing issues raised by Defendants, but Plaintiff's Response falls short, as seen below.

**B.** **Plaintiff's Response Disavows the Only Mechanism in Texas for Recovery of Damages**

Under Texas common law, when a person died, with the exception of claims for property damage, any cause of action for damages held by the person died with him. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 784 (Tex. 2006) *citing Johnson v. Rolls*, 97 Tex. 453, 79 S.W. 513, 514 (1904). The person's lawful heirs, such as parents or a spouse, could not prosecute the suit in the deceased's absence. *Fort Worth Osteopathic Hosp.,*

*Inc. v. Reese*, 148 S.W.3d 94, 96 (Tex. 2004). To address the perceived inequity in such a law, the Texas legislature passed the Wrongful Death Act and the Texas Survival Act.[2] *Id.*

Even today, "***absent a statute providing to the contrary***, a cause of action that is penal or personal in nature typically does not survive, while claims that are contractual in nature or affect property rights survive the death of either party" (emphasis added). *Belt*, 192 S.W.3d at 784.

The Texas Survival Act is the statutory means by which a decedent's estate can recover damages sustained **while the decedent was alive**. TEX. CIV. PRAC. & REM. CODE § 71.021(b); *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343 (Tex. 1992); *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 857 (Tex.App.—San Antonio 1997, writ denied).

So, if a claimant has no damages which the claimant incurred prior to his death, or if the claimant refuses to seek relief under the Texas Survival Act, then he is left with the common law. And, the common law provides no relief. *Belt*, 192 S.W.3d at 784; *Johnson*, 29 S.W. at 514. As shown in Defendants' Rule 12(b)(1) Motion to Dismiss, Plaintiff did not assert any claim against Dr. Farley or Valley Forensics for conduct that occurred prior to Miranda Jr.'s death. (Motion, p. 5 *citing* Complaint, pp. 22-23, 26, 31). Because Defendants had no involvement in the death of Miranda Jr. and only conducted the autopsy, then Defendants could not have damaged Miranda Jr., and the Estate's representative has no damages to pursue under the Survival Act. Moreover, a pleading amendment would be futile because a pleading amendment would not be able to assert that Defendants harmed Miranda Jr. prior to his death,

---

[2]     As shown in Defendants' Rule 12(b)(1) Motion to Dismiss (Motion, p. 4), wrongful death benefits do not belong to the decedent's estate. TEX. CIV. PRAC. & REM. CODE § 71.004(a); *Brown v. Edwards Transfer Co., Inc.*, 764 S.W.2d 220, 223 (Tex. 1988). Plaintiff does not contest this fact.

which would be required to maintain an action under the Texas Survival Act. (*See* Motion, p. 5).[3]

In response, Plaintiff makes the incredible statement that "Plaintiff is not seeking any recovery (in this matter) against any of the Defendants under the Texas Wrongful Death Act, the Survival Statute, or any other common law Texas tort claim." (Response, p. 13, ¶ 40). In the same paragraph, Plaintiff concludes that because the Estate is not seeking damages under any of these schemes, then "the Farley [Rule 12(b)(1)] Motion is misplaced … and requires no further discussion herein."

Plaintiff apparently does not realize that it is disavowing the only mechanisms Texas law provides for recovery of damages in tort when a claimant is deceased. Defendants summarized their first ground for dismissal under Rule 12(b)(1) by stating that "the Estate has no means of recovering anything." (Motion, p. 5). Plaintiff's Response reinforces that conclusion.

Presumably, Plaintiff would argue that it seeks damages under Section 1983 rather than under Texas law, but Plaintiff ignores another argument raised by Defendants in their Motions to Dismiss: "Section 1983 does not create substantive rights; it merely serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *See* Motion, p. 11 *quoting Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991), *citing Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) (stating "one cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything").

---

[3]     As shown in greater detail in the Motions to Dismiss (Motion, pp. 9-10), the Court does not need to provide a plaintiff with the opportunity to amend when an amendment would be futile. *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 628 (5th Cir. 2017) (affirming dismissal of §1983 action pursuant Rule 12(b)(6) without granting leave to amend); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 379 (5th Cir. 2014) ("Because two prior amendments were granted and allowing a third would have been futile, we conclude that the district court did not abuse its discretion by denying Marucci's motion to amend").

Although Section 1983 protects federal constitutional rights, principles of common law torts govern the recovery of damages in Section 1983 actions. *Carey v. Piphus*, 1978, 435 U.S. 247, 257-58 (1978); *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir. 1981). Plaintiff pleads no federal statute which would allow the Estate to recover damages in this case and does not offer one in Plaintiff's proposed amendments.

Logic demands the conclusion that by disavowing all means of recovering damages under Texas state law, and by not seeking damages under federal law, then Plaintiff cannot recover damages under Section 1983. And, because Plaintiff cannot recover damages, then Plaintiff does not have standing to sue. As shown in Defendants' Rule 12(b)(1) Motion, Texas law has three elements that a plaintiff must meet to have standing, one of which is that the plaintiff's alleged injury must be likely to be redressed by the requested relief. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 155 (Tex. 2012). By not requesting any relief other than damages, and by disavowing the only means by which Texas permits a deceased claimant to recover damages, then the Estate's "alleged injury [is not] likely to be redressed by the requested relief." *Id.* This requires dismissal for lack of standing.

### C.    Miranda Jr. Has No Civil Rights

In their Rule 12(b)(1) Motion to Dismiss, Defendants demonstrated that the courts which have addressed the issue of whether a deceased person has civil rights that can be violated hold that he does not. (Motion, pp. 6-8). Defendants cited cases from the Fifth Circuit, the Tenth Circuit, the Ninth Circuit, the Seventh Circuit, the Northern District of Texas, and the Northern District of New York. (Motion, pp. 7-8). All of them unanimously concluded – and all but one

in deciding a Section 1983 claim[4] – that a deceased person does not have any civil rights and cannot sue for Section 1983 violations. (*Id*.).

In Plaintiff's Response, Plaintiff selectively quotes Section 73.001 of the Texas Civil Practice and Remedies Code and asserts that Section 73.001 makes intentional acts committed after the death of a person "actionable if such acts 'blacken the memory of the dead,'" an assertion which Plaintiff appears to apply globally to virtually any and all causes of action. (Response, p. 15 ¶49). The remainder of Plaintiff's Response to Defendants' Rule 12(b)(1) Motion to Dismiss is then dependent upon this "blacken the memory of the dead" portion of Section 73.001. (*Id*., pp. 16-18). For example, in responding to virtually all of the federal cases cited by Defendants which hold that a deceased person has no civil rights, Plaintiff attempts to wave them away by asserting that the states where suit was filed "apparently did not have any state jurisprudence granting a decedent rights to seek damages for post-mortem actions, unlike in Texas." (Response, pp. 17-18). Plaintiff's wholesale reliance on this cherry-picked quote from Section 73.001 does not rescue Plaintiff's lack of standing, or Plaintiff's failure to state a claim upon which relief may be granted, for several reasons.

First, Section 73.001 is merely the Texas statutory remedy for libel; it does not bestow civil rights on a deceased person, and it does not have the global application to all causes of action which Plaintiff asserts. Section 73.001 states that "[a] libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or tends to injure a living person's reputation …." Thus, Section 73.001 is not a globally applied statute that allows a deceased person in any and all potential situations to maintain a cause of action for acts that

---

[4]     Plaintiff argues that *Ravellette v. Smith*, 300 F.2d 854 (7th Cir. 1962) did not involve a Section 1983 claim. (Response, p. 18). While correct, *Ravellette* did decide whether a deceased person has constitutional rights which could be violated and decided that he does not. *Id*. at 857.

occurred to the body or memory of the deceased. Indeed, Section 73.001 does not bestow civil rights to a deceased person in any context.

Second, even in a libel action, Section 73.001 does not permit a deceased person to recover for defamation. Although the phrase "tends to blacken the memory of the dead" would appear, on first impression, to allow a defamation claim on behalf of a deceased individual, the Texas Supreme Court has twice made clear that "one cannot bring a cause of action for the defamation of a person already dead." *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939, 940 n. 1 (Tex. 1988); *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246, 248 (Tex. 1942). So, the phrase "blacken the memory of the dead" provides no substantive rights under Texas law. As a result, Plaintiff's Response – which relies wholly on the groundless belief that Section 73.001 grants civil rights to a deceased person – must be rejected.

Third, after claiming Section 73.001, Plaintiff immediately confesses that the Estate is "not asserting relief under Section 73.001." So, Plaintiff has brought no claim in this Court pursuant to Section 73.001. Accordingly, even if Section 73.001 could bestow a right of some kind upon a deceased person, Plaintiff has disavowed its use.

Fourth, as set forth in more detail in Defendants' Rule 12(b)(6) Motion to Dismiss, Section 1983 does not permit recovery for defamation. (Motion, pp. 11-13 *citing Paul v. Davis*, 424 U.S. 693, 712 (1976); *Thomas v. Kippermann*, 846 F.2d 1009, 1010 (5th Cir. 1988); *Cole v. Gray*, 638 F.2d 804, 811 (5th Cir. 1981)). So, even if the "blacken the memory of the dead" portion of Section 73.001 of the Texas Civil Practice and Remedies Code allowed a deceased person to recover for defamation, Section 73.001 does not give Miranda Jr. any substantive rights that are subject to enforcement under Section 1983.

Fifth, Plaintiff confuses the issue of when state substantive law applies to a Section 1983 claim and when it does not. As shown above and in Defendants' Rule 12(b)(1) Motion to Dismiss, a state's *common law* applies to fill the gaps in administration of civil rights suits. 42 U.S.C. §1988(a); Motion, p. 3. Plaintiff has cited no case or other law which applies any state *statute* in determining a civil rights suit. Assuming that a state's statutory scheme also fills in the "gaps" of Section 1983 actions, Section 73.001 of the Texas Civil Practice and Remedies Code would not fill in any such "gap." Section 73.001 is a statute which permits a libel action on behalf of a person who is defamed while still alive, and Section 1983 does not permit recovery for defamation. *Paul* at 712; *Thomas* at 1010; *Cole* at 811. Instead, Section 1983 provides a procedural mechanism for enforcing rights held under the federal Constitution. *Chapman*, 441 U.S. at 617; *Crumpton*, 947 F.2d at 1420. So, Section 73.001 of the Texas Civil Practice and Remedies Code has no role whatsoever in a Section 1983 case. A Section 1983 case alleges a violation of the United States Constitution, and Section 73.001 of the Texas Civil Practice and Remedies Code does not create any constitutional rights.

Finally, because state substantive law does not displace federal constitutional law, and because Section 1983 is used to remedy violations of the United States Constitution, it is wholly necessary and appropriate to rely upon cases which interpret whether certain conduct violates the United States Constitution. With one exception, all of the cases cited by Defendants which state that a deceased person has no constitutional rights are cases which were decided in the context of a Section 1983 claim – including the Fifth Circuit case of *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir. 1979).[5] The one exception, addressed above, nevertheless interpreted the United States

---

[5] Desperate to avoid *Whitehurst*, because it is binding authority on this Court and because it dismisses the same type of death-investigation-conspiracy theory advocated by Plaintiff, Plaintiff asserts that *Whitehurst* "was an Alabama case" and selectively quotes irrelevant portions of the opinion. That *Whitehurst* originated in Alabama is

Constitution in reaching its decision. Those cases were not applying the substantive law of the state in which they were decided. They were examining the provision of the United States Constitution that was implicated in the case before them. And, they *all held that a deceased person has no constitutional rights*. Thus, Plaintiff has not established standing.

A pleading amendment would be futile because all of the alleged wrongful conduct occurred post-mortem. (Plaintiff's Original Complaint, pp. 1, 20-23, 27, 30, 32-34). *Wiggins*, 710 F. App'x at 628; *Marucci Sports*, 751 F.3d at 379. Furthermore, the involvement of Defendants Dr. Farley and Valley Forensics in this case is confined to the conducting of an autopsy and a determination of the cause of death, as admitted by Plaintiff. (Plaintiff's Original Complaint, pp. 22-23, 26, 31). No pleading amendment can change those facts or create a civil right in a deceased person. Thus, this case should be dismissed for lack of standing. Alternatively, a deceased person's absence of civil rights requires that the case be dismissed for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), as set forth by Defendants. (Motion, p. 8). For the same reasons, a pleading amendment cannot overcome Plaintiff's failure to state a claim because no pleading amendment can change the facts or bestow civil rights on Miranda Jr., who is deceased. *Wiggins*, 710 F. App'x at 628; *Marucci Sports*, 751 F.3d at 379.

## <u>REPLY TO PLAINTIFF'S RESPONSE TO</u>

---

irrelevant; Alabama substantive law was not the basis of the court's decision. Quoting the holding in full, rather than selectively, as Plaintiff did, shows that Plaintiff has no civil rights which can be violated:

> The trial court correctly ruled that the events occurring Post obitum could form no part of the deceased's 42 U.S.C. [§]1983 or [§]1985 action. *The essence of a claim under either section is the deprivation of a Person's constitutional rights.* Here, the events of the alleged cover-up took place after Bernard Whitehurst had been shot and killed. No allegation was made that any conspiracy to kill Whitehurst or to cover up the event existed before the shooting took place. *After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived.* A claim in this instance was properly denied.
>
> *Whitehurst v. Wright*, 592 F.2d at 840 (emphasis added).

<u>**DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**</u>

**II.     <u>Plaintiff's Complaint Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted</u>**

**A.     <u>Miranda Jr. Has No Civil Rights</u>**

In their Motions to Dismiss, Defendants asserted Miranda Jr.'s lack of civil rights as an alternative ground for dismissal under Rule 12(b)(6).  (Motion, p. 10).

In Plaintiff's Response, Plaintiff does not address Miranda Jr.'s lack of civil rights in the context of Defendants' Rule 12(b)(6) Motion to Dismiss.  Instead, Plaintiff alleges that it can amend and assert numerous "Additional Facts."  (Response, pp. 21-29; capitalization in original). Plaintiff ambitiously concludes, without explanation, that these "Additional Facts" are sufficient to overcome *all* of the grounds for dismissal under Rule 12(b)(6).  (*Id.*, pp. 28-29 ¶65).

None of these "Additional Facts" can change the unfortunate fact that Miranda Jr. is deceased.  And, as shown in Defendants' Motions to Dismiss, and again herein, a deceased person has no civil rights and cannot maintain a Section 1983 claim.  A pleading amendment cannot change that incontrovertible fact or the law, so amending to add the "Additional Facts" would be futile and need not be permitted prior to dismissal.  *Wiggins*, 710 F. App'x at 628; *Marucci Sports*, 751 F.3d at 379.

**B.     <u>Plaintiff's Proposed "Amended Facts" Do Not Assert Claims for Damages which are Permitted Under Texas Law</u>**

Defendants' Motions to Dismiss also demonstrated that Plaintiff cannot recover damages under the Wrongful Death Act or the Survival Statute, and Defendants asserted this fact as grounds for dismissal under Rule 12(b)(1) or, alternatively, under Rule 12(b)(6).  (Motion, pp. 4-6, 10-11).

To the extent that Plaintiff's Response addresses Defendants' Rule 12(b)(1) Motion to Dismiss, the Response is replied to above.  As for Defendants' Rule 12(b)(6) Motion to Dismiss,

Plaintiff's only response is to assert additional allegations in an as yet un-filed amended pleading. (Response, pp. 21-30). Nothing in these additional allegations asserts damages under any Texas statute. Moreover, as shown above, Plaintiff's Response actually goes so far as to disavow any reliance on Texas law to recover damages. (*Id.*, p. 13 ¶ 40).

Thus, having disclaimed reliance on Texas law to recover damages, and having asserted no federal statute or other provision which would allow Plaintiff to recover damages, Plaintiff's Complaint should be dismissed for failure to state a claim. The Court need not allow a pleading amendment because Plaintiff has stated that it will not rely on Texas law to recover damages, so a pleading amendment would be futile. *Wiggins*, 710 F. App'x at 628; *Marucci Sports*, 751 F.3d at 379.

### C. Plaintiff's Claims are for Defamation, and Section 1983 Does Not Permit Recovery for Defamation

One of the grounds asserted by Defendants for dismissal under Rule 12(b)(6) is that Plaintiff's claims are, at their core, claims for defamation. And, Section 1983 does not permit recovery for defamation. (Motion, pp. 11-13 *citing Paul v. Davis*, 424 U.S. at 712; *Thomas v. Kippermann*, 846 F.2d at 1010; *Cole v. Gray*, 638 F.2d at 811).

Plaintiff's Response does not address these binding Supreme Court and Fifth Circuit authorities. (Plaintiff's Response, pp. 20-30). Instead, Plaintiff simply alleges a number of "Additional Facts" which Plaintiff claims it could include in an amended pleading. (*Id.*, pp. 21-28). Apparently, Plaintiff expects the Court and Defendants to comb through seven pages of alleged "Additional Facts" in search of a meaningful response. (*Id.*, pp. 22-28). Such a search results in nothing tangible, as none of these "Additional Facts" address *Paul v. Davis*, *Thomas v. Kippermann*, or *Cole v. Gray*. To the contrary, if anything, the "Additional Facts" reinforce

Defendants' argument that Plaintiff's claims are nothing more than defamation claims, if they can even rise to that level.

For example, Plaintiff alleges that Defendants reached their autopsy conclusion that Miranda Jr. committed suicide on the basis of a video clip taken from a private security camera and that the video clip provides no evidence of suicide. (Response, p. 24 ¶¶ (p), (q)). And, Plaintiff alleges that Defendant Dr. Farley "has been highlighted publically throughout the United States as a pathologist who has previously refused to accept a simple finding of suicide, because of Defendant [Dr.] Farley's personal passion to follow *the path to the truth*" and that "it is reasonable to believe that Defendants [Dr.] Farley and [Valley Forensics] deviated from [Dr.] Farley's path to the truth" because of Miranda, Jr's "Status" as a male Hispanic who lives in the Rio Grande Valley of Texas. (*Id.*, p. 28, ¶¶ (rr), (ss); emphasis in original).

Were the Court to allow a pleading amendment which includes these allegations, and all of Plaintiff's remaining "Additional Facts," such an amendment would not change the core complaint made by Plaintiff: that Defendants concluded that suicide was the cause of death, and such a conclusion defamed Miranda Jr. Defamation is not actionable under Section 1983; thus, Plaintiff has failed to state a claim upon which relief may be granted. *Paul*, 424 U.S. at 712; *Thomas*, 846 F.2d at 1010; *Cole*, 638 F.2d at 811. Furthermore, the pleading amendment requested by Plaintiff would be futile, so the Court should not allow an amendment before dismissing this case. *Wiggins*, 710 F. App'x at 628; *Marucci Sports,* 751 F.3d at 379.

### D.    Plaintiff's Failure to State Any Elements of a Civil Rights Violation

In their Rule 12(b)(6) Motion to Dismiss, Defendants demonstrated that Plaintiff's allegation against Defendants failed to satisfy either of the two requirements necessary to state a Section 1983 cause of action: (1) the plaintiff must allege that some person has deprived him of a federal right; and (2) the plaintiff must allege that the person who has deprived him of that right

acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). (Motion, pp. 13-16). Plaintiff has alleged that:

> [I]n support of her Autopsy Conclusion, Defendants Farley and VF replied: (paraphrasing) that it is common for young men [meaning Hispanic] from the Valley to commit suicide, even without ever showing prior signs of depression.

(Complaint, p. 26; ¶77(s)) (use of brackets and parentheses in original).

Defendants set forth three independent reasons why Plaintiff's allegation wholly fails to assert a violation of Miranda Jr.'s civil rights. (Motion, pp. 14-16). Plaintiff attempts to address these three reasons with a seven-page barrage of proposed changes to Plaintiff's Complaint. (Response, pp. 22-28). As shown below, none of the changes which Plaintiff proposes assist Plaintiff in stating a claim against Dr. Farley or Valley Forensics.

### 1. Plaintiff *Still* Does Not Plead that Defendants Said Anything About Miranda Jr.'s Race or Ethnicity

Tacitly admitting that Plaintiff has not alleged that Dr. Farley or Valley Forensics actually stated that Hispanics, or Hispanic young men, are prone to commit suicide, Plaintiff asserts that its proposed pleading amendment solves the problem. It does not.

Plaintiff's proposed changes to the Complaint ***do not allege*** that Dr. Farley or Valley Forensics ***actually said anything*** about Miranda Jr.'s race, ethnicity, or – as newly theorized by Plaintiff – his socio-economic status. (Plaintiff's Response, pp. 22-28).

The following are all of the amendments proposed by Plaintiff which pertain to Dr. Farley and Valley Forensics:

> (m) Defendant Edinburg, Defendant Hidalgo, Defendant [Dr. Farley], and Defendant [Valley Forensics] as described in the applicable autopsy records, were communicating with each other in an effort to determine [Miranda Jr.'s] cause of death and the related Finding as to the manner of [Miranda Jr.'s] Death;

> (n) Upon information and belief, all of the Defendants conducting the Investigations were communicating with each other to determine a cause and

manner of death that would allow for the immediate conclusion of the Investigations;

(o) Defendant Edinburg informed Defendants [Dr. Farley] and [Valley Forensics] that Defendant Edinburg was adopting the [suicide conclusion] prior to, and regardless of, the Autopsy conclusion yet to be reached by Defendants [Dr. Farley] and [Valley Forensics];

(p) according to the respective Autopsy records, Defendant [Dr. Farley] and [Valley Forensics] adopted the [suicide conclusion], purportedly as a result of observations of a video clip (described in the Complaint as the CCTV Clip) taken from a private security camera, some distance away from the site of [Miranda Jr.'s] death;

(q) an independent review of the CCTV Clip reveals that that CCTV Clip offers absolutely no evidence whatsoever to support adoption of the [suicide conclusion];

(r) no reliable evidence exists to support the [suicide conclusion];

(s) the true manner of [Miranda Jr.'s] death is still unknown;

(t) based on statements made by Defendant [Dr. Farley] herself, Defendants [Dr. Farley] and [Valley Forensics] adoption of the [suicide conclusion] was a decision biased and formed as a result of [Miranda Jr.'s] Hispanic ethnicity, gender, social status, economic status, and residence in the Valley (hereafter, collectively "Little Gabriel's Status")[definition in original];
…
(v) upon information and belief, the adoption of the [suicide conclusion] and the ensuing Aborted Investigations was a decision based and formed as a result of Little Gabriel's Status;
…
(rr) Defendant [Dr.] Farley has been highlighted publically throughout the United States as a pathologist who has previously refused to accept a simple finding of suicide, because of Defendant [Dr.] Farley's personal passion to follow *the path to the truth* [emphasis in original];

(ss) based upon Defendant [Dr.] Farley's statements as to Little Gabriel's Status, it is reasonable to believe that Defendants [Dr.] Farley and [Valley Forensics] deviated from [Dr.] Farley's path to the truth because of Little Gabriel's Status.

(Response, pp. 23, 24, 28; capitalized terms in original).

The Court will note that these proposed amendments are even more vague than what Plaintiff currently has in the Complaint, which is the use of "Hispanic" in brackets and the admission that Plaintiff is paraphrasing what was actually said. (Complaint, p. 26; ¶77(s)). Furthermore, the allegation in Paragraph (t) fails to identify any actual statements allegedly made by Dr. Farley. (Response, p. 24).

Plaintiff fails to address Defendants' argument that by placing "Hispanic" in brackets, Plaintiff admits that "Hispanic" was ***not said*** and that Plaintiff simply assumes that this is what Defendants meant. Defendants' proposed amendments simply take the speculation to a new level of absurdity. As the United States Supreme Court has held, and as pointed out in Defendants' Rule 12(b)(6) Motion to Dismiss, pleading speculative assumptions is not pleading "factual content," and factual content is required to survive a challenge under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As stated in *Ashcroft*, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* At most, Plaintiff's proposed amendments offer merely a "sheer possibility that a defendant has acted unlawfully." *Id.* This is not enough to survive Rule 12(b)(6). By failing to allege specific instances of unlawful discrimination, Plaintiff has failed to allege a claim under Section 1983. *Coyne v. City of Somerville*, 972 F.2d 440, 442-45 (1st Cir. 1992. As a result, dismissal under Rule 12(b)(6) is warranted. Plaintiff's proposed amendment would be futile in overcoming Rule 12(b)(6) because the proposed changes do not allege facts as to any discrimination by Dr. Farley or Valley Forensics. So, the Court need not permit an amendment prior to dismissing the Complaint. *Wiggins*, 710 F. App'x at 628; *Marucci Sports,* 751 F.3d at 379.

### 2. *Plaintiff <u>Still</u> Does Not State What Right, Privilege, or Immunity was Deprived*

In Defendants' Rule 12(b)(6) Motion to Dismiss, Defendants showed that one of the elements of a claim under section 1983 is the deprivation of a *federal* right. *Gomez v. Toledo*, 446 U.S. at 640. Defendants also demonstrated that Plaintiff failed to state what federal right, privilege, or immunity it had that was deprived from it by Dr. Farley or Valley Forensics, particularly in light of established law that a deceased person has no civil rights.

The amendments proposed by Plaintiff further fail to state which specific federal right, privilege, or immunity Miranda Jr. has that Dr. Farley or Valley Forensics impacted in any way. (Response, pp. 22-28).

Accordingly, this case should be dismissed under Rule 12(b)(6) for failure to state a claim for which relief may be granted. Because a deceased person has no civil rights, an amendment would be futile. The Court should dismiss Plaintiff's Complaint without requesting or allowing an amendment to Plaintiff's Complaint. *Wiggins*, 710 F. App'x at 628; *Marucci Sports,* 751 F.3d at 379.

### 3. *There is <u>Still</u> No Allegation that Miranda Jr.'s Race or Ethnicity Played any Role in the Autopsy Conclusion or the Investigation into his Death*

Defendants' Rule 12(b)(6) Motion to Dismiss contends that Plaintiff wholly failed to allege that Miranda Jr.'s race or ethnicity played any role whatsoever in the autopsy conclusion or the investigation into Miranda Jr.'s death.

Almost lost in the murky quagmire of Plaintiff's numerous proposed amendments is Plaintiff's theory as to why all of the Defendants allegedly conspired to conclude that Miranda Jr.'s death was a suicide. Plaintiff seeks to amend to allege the following:

> (aa) the circumstances of [Miranda Jr.'s] Death, arising from the exit of an emergency exit door of a school bus going over 65 miles per hour, created

obvious and known potential causes of action for damages against those responsible ("Known Causes of Action");

(bb)    the Known Causes of Action created personal property rights ("Property Rights") of [Miranda Jr.] and the family and heirs of [Miranda Jr.];

(cc)    from the moment each Defendant became aware of [Miranda Jr.'s] Death, each Defendant also became aware of the Known Causes of Action;

(dd)    the Adoption of the [suicide conclusion] and the Aborted Investigations have harmed, and continue to harm, [Miranda Jr.'s] Property Interest as being asserted in the State Court Action.

(Plaintiff's Response, pp. 25, 26; defined and capitalized terms in original).

Thus, under this theory, although Plaintiff alleges that Miranda Jr. was a young, Hispanic male who lived in the Rio Grande Valley of Texas, it is clear from Plaintiff's alleged conspiracy theory that race, ethnicity, gender, and socio-economic status were *not* the motives for the alleged conspiracy. Instead, the alleged motive is that Defendants wanted to affect or repudiate claims that Plaintiff asserted in state court. In other words, the alleged motive is money – not anything else. Thus, there is no civil rights violation, and Plaintiff's claim under section 1983 must be dismissed pursuant to Rule 12(b)(6). The Court should dismiss without requesting or allowing an amendment to Plaintiff's Complaint. *Wiggins*, 710 F. App'x at 628; *Marucci Sports,* 751 F.3d at 379.

### E.    Plaintiff Did Not Address Defendants' Qualified Immunity

Defendants' final ground for dismissal pursuant to Rule 12(b)(6) is that Dr. Farley and Valley Forensics should be dismissed from this suit because they are entitled to qualified immunity. Motion, pp. 16-18 *citing Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) and *White v. Pauly*, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). Once a defendant raises qualified immunity as a defense against a section 1983 claim, the burden shifts to the plaintiff to rebut the qualified immunity defense. *Waltman v. Payne,* 535 F.3d 342, 346 (5th Cir.

2008). To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Id.*

Plaintiff did not establish that Dr. Farley or Valley Forensics violated an actual, clearly established constitutional right. *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009); *Clancey v. City of Coll. Station, Texas*, No. 4:09-CV-1480, 2010 WL 1268083, at *3 (S.D. Tex. Mar. 25, 2010). And, Plaintiff did not establish that Defendants' conduct was objectively unreasonable. *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 1718, 140 L. Ed. 2d 1043 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Plaintiff's Response makes no effort to address the qualified immunity of Dr. Farley and Valley Forensics. (Response, pp. 20-30). Although Plaintiff offers to amend its Complaint to allege that individual Defendants other than Dr. Farley were involved in various alleged conduct, Plaintiff made no such allegation against Dr. Farley. (*Id.*, pp. 26-28). Even if those allegations had included Dr. Farley and Valley Forensics, they fall far short of alleging a violation of Miranda Jr.'s civil rights, as set forth above. (*Id.*). More significantly, Plaintiff cannot amend to allege a violation of Miranda Jr.'s civil rights because a deceased person has no civil rights, as shown in Defendants' Motions to Dismiss and hereinabove. (Motion, pp. 6-8, 16-18).

Thus, the Court should dismiss without requesting or allowing an amendment to Plaintiff's Complaint since an amendment would be futile. *Wiggins*, 710 F. App'x at 628; *Marucci Sports,* 751 F.3d at 379.

## <u>CONCLUSION AND PRAYER FOR RELIEF</u>

As shown in Defendants' Motions to Dismiss, Defendants established that the Estate has no standing to sue. (Motion, pp. 2-8). Even if the Court permits a representative for the Estate to appear, the addition of a representative will not cure the Estate's lack of standing.

Furthermore, if the Court does not dismiss pursuant to Rule 12(b)(1), the Court should dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). (Motion, pp. 8-18).

Each and every one of the grounds set forth in Defendants' Motions to Dismiss is an independent and sufficient basis for the Court to dismiss Plaintiff's Complaint without providing Plaintiff with an opportunity to amend, because filing an amendment would be futile.

**WHEREFORE, PREMISES CONSIDERED**, Defendants Norma Jean Farley, M.D. and Valley Forensics, P.L.L.C. pray that this Court grant their Rule 12(b)(1) Motion and dismiss this case for lack of subject matter jurisdiction. Alternatively, Defendants pray that the Court dismiss this case for failure to state a claim upon which relief may be granted, pursuant to FED. R. CIV. P. 12(b)(6). Defendants also request all such other and further relief to which they may be justly entitled.

Respectfully submitted,

**GONZALEZ CASTILLO, LLP**


By:    /s/Edward J. Castillo

        **STEVEN M. GONZALEZ**
        State Bar No. 08131900
        sgonzalez@valleyfirm.com
        **EDWARD J. CASTILLO**
        State Bar No. 240406580
        ecastillo@valleyfirm.com
        **JUAN GONZALEZ**
        State Bar No. 24087602
        jgonzalez@valleyfirm.com

1317 E. Quebec Avenue
McAllen, Texas 78503
(956) 618-78503 (Telephone)
(956) 618-0445 (Facsimile)

**COOPER & SCULLY, P.C.**
**DIANA L. FAUST**
State Bar No. 00793717
diana.faust@cooperscully.com
**KYLE M. BURKE**
State Bar No. 24073089
kyle.burke@cooperscully.com
**DAVID H. JONES**
State Bar No. 10869590
david.jones@cooperscully.com
900 Jackson Street, Suite 100
Dallas,, Texas 75202
(214) 712-9500 (Telephone)
(214) 712-9540 (Facsimile)

**ATTORNEYS FOR DEFENDANTS,
NORMA FARLEY, M.D., AND
VALLEY FORENSICS, PLLC**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served on the following counsel of record on this the 28th day of January, 2019.

Mr. Terry P. Gorman                                                    **VIA EFILE**
tgorman@school-law.co
Gorman Law Firm, PLLC
901 Mopac Expressway South, Suite 300
Austin, Texas 78746
**Counsel for Plaintiffs**

** INCLUDE DEFENSE COUNSEL – SEE CERTIFICATE OF SERVICE IN COMBINED RESPONSE**

/s/Edward J. Castillo
**EDWARD J. CASTILLO**