Case 7:18-cv-00348 Document 60 Filed on 02/18/20 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
February 18, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| ESTATE OF GABRIEL MIRANDA, JR., § § Plaintiff, § VS. § CIVIL ACTION NO. 7:18-CV-348 § HARLINGEN CONSOLIDATED § INDEPENDENT SCHOOL DISTRICT, *et al*, § § § Defendants. § | |

### ORDER GRANTING ALL DEFENDANTS' RULE 12(b)(1) MOTIONS TO DISMISS

**I.  Factual and Procedural Background**

Now before the Court are four separate Motions to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by: Defendants Harlingen Consolidated Independent School District and Superintendent Dr. Arturo Cavazos (Dkt. No. 39), Hidalgo County and County Judge Ramon Garcia (Dkt. No. 40), Valley Forensics, P.L.L.C. and Dr. Norma Jean Farley (Dkt. No. 41), and City of Edinburg and its Police Department, Police Chief David Edward White, Mayor Richard H. Garcia, and City Manager Richard M. Hinojosa (Dkt. No. 42). Through this suit filed on November 12, 2018, Plaintiff "Estate of Gabriel Miranda, Jr." (also referred to herein as the "Estate") alleges that on November 14, 2016, then-13-year-old Gabriel Miranda, Jr. ("Gabriel") died when he fell or was pushed from the rear emergency door exit of a HCISD school bus traveling approximately 65 miles per hour over poor surface conditions, and that Defendants then conspired to arrive at the false, official conclusion that Gabriel committed suicide. (Dkt. Nos. 1, 37). Plaintiff seeks to hold Defendants liable under 42

U.S.C. § 1983 for their "post-death acts"[1] comprising the conspiracy, which allegedly deprived Plaintiff of its rights to procedural and substantive due process and equal protection under the Fourteenth Amendment to the U.S. Constitution.  (*Id.* at § E).  After Defendants moved to dismiss Plaintiff's Original Complaint under Rules 12(b)(1) and 12(b)(6), Plaintiff moved for leave to amend its pleading and the Court granted the motion for leave as unopposed, rendering moot the original motions to dismiss.  *See*, *e.g.*, (Dkt. No. 36).  Upon the filing of Plaintiff's First Amended Complaint, now the live pleading, Defendants filed the present Motions, again seeking dismissal under Rule 12(b)(1) on the grounds that Plaintiff lacks the requisite capacity and standing to bring suit, and under Rule 12(b)(6) on the asserted basis that Plaintiff has otherwise failed to state a plausible claim for relief.  *See* (Dkt. Nos. 37, 39-42).  Upon consideration of the Motions, Plaintiff's response (Dkt. No. 48),[2] and Defendants' replies (Dkt. Nos. 49, 55, 56, 57), in light of the relevant law, the Court finds that Plaintiff lacks standing to pursue its § 1983 claims against Defendants in this case, and therefore the Court must dismiss the case under Rule 12(b)(1) for lack of subject-matter jurisdiction.

## II.   Defendants' Rule 12(b)(1) Motion to Dismiss

### A.   Standard of Review

Federal courts have limited jurisdiction, and therefore, the power to adjudicate claims only when jurisdiction is conferred by federal statute and the U.S. Constitution.  *E.g.*, *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins.*

---

[1]  Plaintiff identifies these acts as "the Non-Investigation" into cause of death, "the Great Lie" that Gabriel committed suicide, "the Purposely Limited Evidence" and "Evidence Ignored" in arriving at that conclusion, the "Continued Falsehoods" perpetuating the "Great Lie," the alleged discriminatory "Autopsy Conclusion" "that it is common for young men [meaning Hispanic] from the Valley to commit suicide, even without ever showing prior signs of depression," and "the Coverup of the true cause of [Gabriel's] death."  (Dkt. No. 48 at ¶ 13; *see* Dkt. No. 37 at ¶¶ 65-119, 123(8)).

[2]  The Court granted two unopposed requests by Plaintiff to extend its deadline for responding to the Motions, and Plaintiff timely filed its "combined response" to the Motions within the final extension granted.  *See* (Dkt. Nos. 45, 47, 48).

*Co.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). Article III of the U.S. Constitution "limits the jurisdiction of the federal courts to 'Cases' and 'Controversies,'" and "[t]he doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) (quoting U.S. CONST., Art. III, § 2; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (some internal quotations and alteration omitted)). To establish Article III standing, a plaintiff must demonstrate that: "(1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Id.* (quoting *Hous. Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 617 (5th Cir. 2007)).

A court properly dismisses a case for lack of subject-matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)); *see* FED. R. CIV. P. 12(b)(1). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," who "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]") (internal citations omitted).

### B. Plaintiff's Capacity and Standing to Sue

### 1. Overview

Through their Rule 12(b)(1) Motions, all Defendants make variations of the argument that the Estate lacks capacity and standing to bring suit for the alleged deprivation of its rights under § 1983. *See* (Dkt. No. 39 at ¶¶ 16-18; Dkt. No. 40 at ¶¶ 3.1-3.5; Dkt. No. 41 at pp. 3-8; Dkt. No. 42 at ¶¶ 5-7). The Federal Rules of Civil Procedure instruct the Court to determine capacity "by the law of the state where the court is located," and 42 U.S.C. § 1988 and Fifth Circuit precedent also direct the Court to the law of this State to "fill the gaps in administration of civil rights suits," to include matters of standing in § 1983 actions. FED. R. CIV. P. 17(b)(3); *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004); *see* 42 U.S.C. § 1988(a); (Dkt. No. 39 at ¶ 17; Dkt. No. 41 at p. 3). Under Texas law, "[a] plaintiff must have both standing and capacity to bring a lawsuit," but the two are distinct concepts; "[t]he issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome, whereas the issue of capacity 'is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate.'" *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1559 (2d ed. 1990)); *see* (Dkt. No. 42 at ¶¶ 5, 6).

### 2. Capacity

Defendants point to Texas statutory and case-law authority directing that a decedent's estate is property, "not a legal entity [which] may…properly sue or be sued as such,"[3] and Plaintiff's responsive citation to the Texas Estates Code,[4] in an effort to emphasize that the

---

[3] *See* TEX. ESTATES CODE § 22.012; *e.g.*, *Lovato*, 171 S.W.3d at 849 (quoting *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975)); (Dkt. No. 39 at ¶ 17; Dkt. No. 40 at ¶ 3.1; Dkt. No. 41 at p. 4; Dkt. No. 42 at ¶ 6).
[4] *See* TEX. ESTATES CODE § 22.0238(3); (Dkt. No. 48 at ¶¶ 28, 29).

Estate includes "claim[s] that could be asserted or otherwise belonged to the decedent," only reinforces this point. Nonetheless, Plaintiff argues that "the description of Plaintiff in this matter as being [the Estate] is appropriate to allow the assertion of claims owned by [Gabriel] against the Defendants" because Gabriel's parents are his sole heirs, sole applicants to act as personal representatives of his Estate, and "are referenced in the Amended-Complaint as the individuals bringing this matter." (Dkt. No. 48 at ¶ 37). Within its pleading, Plaintiff identifies Maria Fuentes and Gabriel Miranda, Sr. as Gabriel's parents and sole heirs in whom the Estate vested at the time of their son's death, and although the pleading also identifies them as the sole personal representatives of the Estate, Plaintiff's response admits that their "application for letters of dependent co-administration" in *Estate of Gabriel Miranda, Jr.*, Cause No. 2018-CPC-00327, County at Court at Law No. 4, Cameron County, Texas, was pending as of the date of the response. *See* (Dkt. No. 37 at ¶¶ 3, 64; Dkt. No. 48 at ¶¶ 30, 31, 35-37); TEX. ESTATES CODE §§ 101.001(b), 201.001(a), (c). As Defendants emphasize, "it is settled in Texas that [a court-approved] personal representative of the estate of a decedent is ordinarily the only person entitled to sue for the recovery of property belonging to the estate," and that "[b]efore the heirs at law can maintain such a suit…, they must allege and prove that there is no administration pending and none necessary." *E.g.*, *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971); *see* (Dkt. No. 39 at ¶ 17; Dkt. No. 40 at ¶ 3.2; Dkt. No. 41 at p. 4). Plaintiff admits to the pendency of the probate proceeding, and therefore to the inability of Gabriel's parents to sue as heirs of the Estate. However, the Court takes judicial notice of the fact, acknowledged by one set of Defendants, that an order granting the requested letters of administration was entered on June 6, 2019 in that proceeding. *See* (Dkt. No. 56 at ¶ 2.2).[5] Since under Texas law, a defect in capacity may be

---

[5] The docket of the probate proceeding is available publicly through portal.co.cameron.tx.us, and the Court finds that the June 6, 2019 entry falls within those facts of which the Court may take judicial notice.

cured, and demonstrably could be in this case were the Court to allow the substitution of the proper parties—Gabriel's parents, as personal representatives of the Estate—the Court will not dismiss the suit by virtue of the Estate's lack of capacity to sue on its own behalf. *See, e.g., Lovato*, 171 S.W.3d at 851-53.

3.  **Standing**

The Estate may, however, have "a justiciable interest in the controversy sufficient to confer standing" so long as it meets federal constitutional standing requirements, again by demonstrating that it suffered the requisite injury-in-fact fairly traceable to Defendants' conduct and likely redressable through a favorable judgment. *Id.* at 850; (Dkt. No. 39 at ¶ 18; Dkt. No. 40 at ¶ 3.3; Dkt. No. 41 at p. 3; Dkt. No. 42 at ¶ 5). Defendants attack Plaintiff's ability to do so, chiefly on the asserted basis that the Estate, comprised in relevant part of those claims belonging to Gabriel at the time of his death, has suffered no injury-in-fact on account of Defendants' "post-death acts" comprising the alleged conspiracy to falsely conclude that Gabriel committed suicide. *See* (Dkt. No. 39 at ¶¶ 16, 18; Dkt. No. 40 at ¶¶ 3.3, 3.4; Dkt. No. 41 at pp. 3, 5-8; Dkt. No. 42 at ¶ 7 n.1). Among other cases outside this Circuit, Defendants point to binding precedent in *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir. 1979), in which the Fifth Circuit held that a mother serving as personal representative for her deceased son's estate could not hold the defendants liable under § 1983 for the alleged cover-up of her son's death, since "[a]fter death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived." *Whitehurst*, 592 F.2d at 840; *see* (Dkt. No. 39 at ¶ 18; Dkt. No. 41 at pp. 6-7). Plaintiff advances four arguments for why the Court should disregard *Whitehurst*, none of which is availing. First, Plaintiff argues that "no citations to any statute or caselaw anywhere in the United States were [used] to support such conclusion," but the decision plainly

---

*See* FED. R. EVID. 201.

relies on U.S. Supreme Court and other case-law authority to support its finding that "a corpse has no civil rights." (Dkt. No. 48 at ¶ 55(a)); *see Whitehurst*, 592 F.2d at 840 n.9. Second, the Court's explanation that its holding was "not that cover-up of a wrongful death is without civil or criminal effect," did not somehow call into question the holding, which remains binding on this Court. (Dkt. No. 48 at ¶ 55(b)); *Whitehurst*, 592 F.2d at 841. Third, the Fifth Circuit's observation that in a prior case, *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), it had "concluded that in order to give full effect to the Civil Rights Act, such actions must be recognized if applicable state law so provides," was part of its effort to distinguish the case before it and "such actions," like *Brazier*, where state wrongful death and survival statutes supply the right to bring a § 1983 action for "violations of civil rights *causing* death" and "damages sustained *during the decedent's lifetime*." (Dkt. No. 48 at ¶ 55(c)); *Whitehurst*, 592 F.3d at 840 (emphasis added); *see Brazier*, 293 F.2d at 409-10 (as permitted by § 1988, Georgia wrongful death and survival statutes supplied widow and survivors with right to bring federal civil rights action for violations of decedent's constitutional rights prior to his death). Plaintiff's fourth argument attempts to alleviate this distinction, claiming that *Whitehurst* "was an Alabama case," and that here, Texas law "grant[s] a decedent rights to seek damages for post-mortem actions." (Dkt. No. 48 at ¶ 55(d)). The single provision of Texas law on which Plaintiff relies is § 73.001 of the Texas Civil Practices and Remedies Code, which Plaintiff interprets to make actionable "intentional acts committed after the death of person…if such acts 'blacken the memory of the dead.'" (*Id.* at ¶¶ 40-41, 50 (quoting TEX. CIV. PRAC. & REM. CODE § 73.001)). However, as Defendants emphasize, § 73.001 does not sweep so broadly; it supplies the statutory definition of libel, providing in relevant part that "[a] libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead," TEX. CIV. PRAC. & REM.

CODE § 73.001, and the Texas Supreme Court has interpreted this language to imply a right of action only in favor of "one whose reputation has suffered injury from the defamation," *Renfro Drug Co. v. Lawson*, 138 Tex. 434, 440 (1942). (Dkt. No. 49 at pp. 6-7; Dkt. No. 56 at ¶ 2.5; Dkt. No. 57 at ¶ 10). In other words, as that Court observed in a later case, "one cannot bring a cause of action for the defamation of a person already dead," but "one who is alive while he is defamed and later dies, has a cause of action which survives his death" by virtue of the Texas survival statute. *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939, 940 n.1 (Tex. 1988); *see* (Dkt. No. 49 at p. 7; Dkt. No. 56 at ¶ 2.5). Since Plaintiff does not allege that any Defendant defamed Gabriel prior his death, the Estate cannot rely on § 73.001 to supply the injury-in-fact giving rise to a § 1983 cause of action against Defendants. Moreover, Plaintiff's additional arguments reveal that the alleged injury for which it seeks to recover consists not in damage to the reputation of Gabriel or any other, but in harm to Plaintiff's efforts to recover damages in two other pending lawsuits challenging "the acts and omissions which caused [Gabriel's] death," "by creating and allowing false defenses to be asserted, and, by poisoning the jury pool for such Suits." (Dkt. No. 48 at ¶¶ 46, 47).[6] Notwithstanding that Plaintiff's reliance on § 73.001 falls away in light of this concession, the standing inquiry has always demanded an injury-in-fact that is "actual or imminent, not conjectural or hypothetical," and that it be "fairly traceable" to the defendant's conduct. *E.g.*, *Cruz*, 849 F.3d at 598 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The "false defenses" to which Plaintiff refers are those predicated on the official

---

[6] The other lawsuits are: (1) a state-law action challenging "the negligent and intentional actions of those responsible for [Gabriel's] death" and "the malicious and callous actions undertaken by those who have attempted to cover up the cause of his death," pending in the 398th Judicial District Court, Hidalgo County, Texas; and (2) as amended without opposition, a strict liability action against the companies allegedly involved in the design, manufacture, and sale of the bus in which Gabriel was riding prior to his death, pending in this Court. (Dkt. No. 48 at ¶ 11); *Gabriel Miranda, Jr., Deceased, et al. v. Harlingen Consolidated Independent School District, et al.*, Cause No. C-4899-17-1, at Original and Second Amended Petitions, available at pa.co.hidalgo.tx.us; *Gabriel Miranda, Sr., et al. v. Navistar, Inc., et al.*, Civil Action No. 7:17cv353 at (Dkt. No. 38).

conclusion that Gabriel committed suicide, but the record contains no indication that Plaintiff has been or is unable to challenge this conclusion through the discovery process or otherwise, and Plaintiff's ability to recover on its claims is contingent upon multiple factors at issue in any litigation. The existence of a jury pool exposed to news and social media discussion of the official cause of death also imposes no actual barrier to Plaintiff's ability to prevail on the merits of its claims, since the jury selection process and option to transfer a case serve as means to avoid a tainted jury. For all of these reasons, the Court must conclude that Plaintiff has failed to demonstrate standing to proceed with its § 1983 claims against Defendants in this case, and that the Court must dismiss the case for lack of subject-matter jurisdiction.[7]

**III.    Conclusion**

For the foregoing reasons, the Court hereby **ORDERS** that Defendants' Rule 12(b)(1) Motions (Dkt. Nos. 39-42) are **GRANTED**, and Plaintiff's claims asserted against all Defendants are **DISMISSED** without prejudice.

SO ORDERED this 18th day of February, 2020, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[7] The Court has no need, therefore, to address Defendants' grounds for dismissal under Rule 12(b)(6).